

**SO ORDERED.**

**SIGNED this 23 day of March, 2010.**

*Dale L. Somers*

**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

---

Opinion designated for publication and on-line use
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

**STARLITE HOUSEBOATS, INC.,**

              **DEBTOR.**

**CASE NO.  09-24200**
**CHAPTER 7**

## MEMORANDUM OPINION AND ORDER DISMISSING INVOLUNTARY PETITION

This is an involuntary Chapter 7 case against Debtor Starlite Houseboats, Inc. (hereafter "Starlite") filed by three creditors, H2O Resorts International, LTD (hereafter "H2O"), C & E Hardwood, LLC, and Cummins Crosspoint, LLC.  Starlite, through Denison State Bank as state court Receiver of Starlite, answered the petition and opposes the granting of the involuntary petition.  Debtor also filed a motion to dismiss for lack of service and a motion for dismissal or abstention.  Starlite primarily contends that the involuntary petition was not properly served; that H2O is not qualified to be one of the three creditors filing the involuntary petition because the Debtor's obligation on the judgment in favor of H2O is subject to a bona fide dispute as to

liability or amount; and that in any event the Court should abstain from hearing this bankruptcy case. H2O contends that the petition was properly served, that the Receiver is not a proper party to answer the petition, that it has a claim against the Debtor which is not subject to a bona fide dispute, and the Court should not abstain. This is a core proceeding over which this Court has jurisdiction.

Trial on Debtor's motion to dismiss the involuntary case or to abstain was held over three days, commencing on February 17, 2010 and concluding on February 24, 2010. During trial, the Court held the summons and petition in the involuntary case were properly served by first class mail and at the conclusion of the hearing placed the remaining issues under advisement. The Court has considered the evidence, the briefs, and arguments of counsel and is now ready to rule. For the reasons stated below, the Court holds: That Denison as Receiver is the proper party to respond to the petition; that H2O's claim against the Debtor based upon a judgment is subject to bona fide dispute, so the involuntary petition was not filed in accord with the Code; and that even if the petition were proper, the Court would abstain from hearing this case.

**FINDINGS OF FACT.**

Debtor Starlite Houseboats, Inc. (hereafter as referred to as "Debtor" or "Starlite") is a Texas corporation in good standing in Texas. The records of the Texas Secretary of State show that the address of Starlite Houseboats, Inc. is 3706 S. Topeka Blvd., Ste 302, Topeka, KS 66609 and the registered agent is Roger Aldis, 14768 Madien Ct., Dallas, Texas 75254. The records of the Kansas Secretary of State show that Debtor registered in Kansas as a foreign for profit corporation in 2001, but as of February 20, 2010, it had forfeited its status for failure to timely file annual reports; that its current mailing address is 1478 Maident Court, Dallas, Tx 75240; that

its registered agent is Shelly Coley; and that its registered office is 3706 S. Topeka Blvd., Ste 302, Topeka, KS 66609.

Roger Aldis was the sole shareholder, officer, and director of Starlite. At all times relevant to this action, until his death on March 27, 2009, Roger Aldis resided in Holton, Jackson County, Kansas. Starlite was formerly in the business of selling large houseboats which were built to the specifications of each purchaser. The business was conducted on-line. Starlite contracted with third parties for the manufacture of the boats. There was no evidence that Starlite had a brick and mortar office or any employees. The 3706 S. Topeka Blvd., Suite 302, Topeka, KS 66609 address stated in the Office of the Texas Secretary of State as the corporation's "address" and in the Office of the Kansas Secretary State as the "registered office," is the address of Mr. Aldis' and Starlite's accountants, Cummins & Coffman CPA's, PA. Mr. Aldis also used to conduct business from that office.

Since 1994, Denison State Bank provided financing to Starlite Houseboats, Inc. The loan was secured by substantially all of the assets of the borrower and the personal guarantee of Mr. Aldis, dated October 3, 2008. The loan documents use 3706 S. Topeka Blvd., Suite 302, Topeka, KS 66609 as Starlite's mailing address.

Todd Butler, attorney at law in Topeka, Kansas, with an office address of 3706 S. Topeka Blvd., Suite 300, Topeka, KS 66609, down the hall from the Cummins & Coffman office, held a Durable Power of Attorney for Finances for Roger Aldis, dated February 6, 2009. It authorized Mr. Butler to serve as Mr. Aldis' "true and lawful attorney in fact for me and in my name and stead and to my use, with full power to handle, manage and transact any and all of my business and financial affairs of every kind and nature whatsoever for me." At some time, the date of

which is not in evidence, a change of address form was filed with the Topeka U.S. Post Office so that mail addressed to Mr. Aldis at the 3706 S. Topeka Blvd., Suite 302 address was to be forwarded to Mr. Butler's office in suite 300.  There is no evidence that a change of address form was filed as to Starlite Houseboats, Inc.  However, Mr. Butler did testify that the accountants had stopped accepting mail for both Starlite and Mr. Aldis and that Mr. Butler's office was receiving mail for Starlite and Mr. Aldis on a routine basis.

On March 12, 2009, petitioning creditor H2O International Resorts, Ltd. filed a complaint in the U.S. District Court for the District of Kansas, at Kansas City, Kansas, against Roger Aldis, Starlite Houseboats, Inc., and Starlite, LLC (the "Federal Case")[1].  The suit is for damages arising out of the contract for H2O's purchase of a houseboat from Starlite which was allegedly damaged when received.  Claims for breach of contract, lost profits, successor liability, breach of warranty and fraud are alleged as to all defendants.  H2O's counsel had sent Mr. Butler a letter dated March 16, 2009, requesting that he waive service in the Federal Case as to Mr. Aldis and the Starlite Houseboat entities, but Mr. Butler did not respond or return the waiver of service. On March 17, 2009, H2O had summonses issued as follows:

Roger Aldis
3706 Topeka Blvd.
Suite 302
Topeka, KS 66609

Starlite Houseboats, LLC
Serve: Registered Agent Roger Aldis
330 Rockland Road
Henderson TN 37075

Starlite Houseboats, Inc.
c/o Roger Aldis, Registered Agent
330 White Way Inn Road
Monticello KY 42633

Starlite Houseboats, Inc.
Registered Agent: Shelly Colby (sic)
3706 Topeka Blvd., Suite 302
Topeka, KS 66609

---

[1] Case no. 09-CV-2124, United States District Court for the District of Kansas.

4

The Returns of Service reflect that all services were made via certified mail, return receipt requested, and that the service to Mr. Aldis personally and to Starlite Houseboats, Inc. at the Topeka addresses were delivered to suite 300, not suite 302. As stated above, suite 302 was an accountant's office. The portion of the addresses on the mail receipt cards specifying the number was altered by a cross out of number 302 and the substitution of number 300 for 302. It is unknown who is responsible for the cross out.

The mail receipt cards for Mr. Aldis and the Debtor at the Topeka address were signed for by a Jolene Holmes, a secretary in Todd Butler's employ, on March 18, 2009. Neither Mr. Butler nor Ms. Holmes were the registered agent of Starlite Houseboats, Inc. There was no evidence that either Mr. Butler or Ms. Holmes were employed by or appointed as agents for Starlite. As found above, Mr. Butler did hold a general power of attorney for Mr. Aldis but was not expressly authorized to receive summonses on his behalf. Mr. Butler, whose primary legal practice is debt collection, routinely receives several certified letters each day, often containing checks. His secretaries routinely sign for such mail. When his office received the summons for Starlite, Mr. Butler did not believe that he was accepting service of process on behalf of Debtor.

On March 18, 2009, Mr. Butler wrote a letter to Starlite's insurance carrier asking if the company would defend the Federal Case. Mr. Butler also informed Dennis Hadley, Executive Vice President of Denison State Bank, Dennis White, attorney for Denison State Bank, and Roger Aldis of the existence of the lawsuit. The insurance company refused to defend the Federal Case.

5

Mr. Aldis died March 27, 2009.  On April 23, 2009, Denison State Bank was appointed by the Jackson County, Kansas District Court as Administrator of Mr. Aldis' probate estate and Receiver of Starlite Houseboats, Inc.  Denison's receivership petition stated that the mailing address of Starlite was 3706 S. Topeka Blvd., Suite 302, in Topeka.  Since the receivership was commenced, the Receiver has taken control of several houseboats.  Construction of each of these houseboats was incomplete and required additional work before they could be sold to the public.  The Receiver hired third parties to complete the boats.  It has advanced substantial sums and incurred obligations to finish the boats.  It has given notice of the date for filing claims to existing creditors, which exceed 12 in number.  It has filed motions to sell assets, to abandon assets, and to otherwise liquidate assets in accord with state law.  There has been litigation over the value of the boats and other issues.  The Receiver has sought and obtained approval of various actions from the state court.  According to the Receiver, after liquidation, there will be no money available to pay unsecured creditors.

H2O filed a Statement of Claim in the Receivership on July 9, 2009, in the amount of $1,090,827, and filed petition for allowance of claim in the Probate Estate on the same day.  Ms. Shidler, attorney for H2O, appeared at some hearings in the probate/receivership proceedings and filed objections on August 5, 2009 and September 2, 2009.

On May 15, 2009, H2O in the Federal Case filed a Motion to Substitute Dennis Hadley of Denison State Bank, Administrator of the Roger Aldis Estate.  This was after H2O's counsel, Ms. Shidler, on May 15, 2009, had e-mailed Mr. Dennis White, the attorney for the bank in the probate and receivership proceedings.  In that email, Ms. Shidler indicated she had filed a motion to substitute Dennis Hadley in his capacity as Administrator for Mr. Aldis personally in the

Federal Case. She noted that she understood that the "bank will be petitioning or has petitioned for receivership for Starlite Houseboats, Inc. Before I filed for default judgment against the estate and the various Starlite entities, I wanted to give you and the bank an opportunity to answer the complaints."[2] The Motion to Substitute was served on Mr. Hadley as Administrator of the Roger Aldis Estate, and the estate attorney, Mr. White; it was not served on Starlite Houseboats, Inc. or the Bank in its capacity as Receiver, and was not served with notice. Mr. White, although having knowledge of the pendency of the Federal Case, did not file an entry of appearance, nor did any other lawyer on behalf of Mr. Aldis or Starlite Houseboats, Inc.

On June 26, 2009, H2O filed a Verified Application for Entry of Default against Defendants Aldis, Starlite Houseboats, Inc. and Starlite, LLC, stating that "on March 18, 2009, service of process was obtained on Mr. Aldis personally and as registered agent for Starlite Houseboats, LLC;" and that "on March 18, 2009, service of process was obtained on Ms.Colby [sic] as registered agent for Starlite Houseboats, Inc."[3] H2O served all subsequent motions/notices in the Federal Case on Mr. White and Mr. Hadley as Administrator; Starlite Houseboats, Inc. was not served, nor was the Receiver ever substituted for Starlite Houseboats, Inc. The Clerk entered an Entry of Default of June 29, 2009; the Hon. Carlos Murguia entered an Order on July 14, 2009 finding that the damages were "uncertain" and could not be ascertained without presentation of evidence. After hearing testimony, on August 25, 2009, the Hon. Carlos Murguia entered a default judgment for $ 1,053,589.20 against all defendants. The transcript of the damages hearing does not reflect any discussion of service. Mr. Sader, another

---

[2] Exh. 13.

[3] Exh. J.

attorney for H2O, sent a letter to Dennis White in October 2009 threatening to file an involuntary unless the bank paid H2O $750,000. Mr. White's responsive letters raised the issue of alleged insufficient service of the complaint in the Federal Case.

The involuntary petition against Starlite Houseboats, Inc. was filed December 18, 2009, the day a hearing had been set in the receivership proceeding to determine which of two competing secured creditors, the Denison State Bank or Kenneth Agee, were entitled to the sales proceeds of Boat 91, which had previously been sold by state court order. The petitioning creditors are H2O, C & E Hardwood, LLC, and Cummins Crosspoint, LLC. The Summons was served on the Debtor by first class mail addressed to Starlite Houseboats, Inc., 3706 S. Topeka Blvd., Suite 302, Topeka, KS 66609. At the time the involuntary was filed, the Bank as Receiver had pending a motion for authority to pay over sales proceeds to the Bank representing the sale of a boat approved by the receivership court. Several boats were still in various states of completion as of the date of the involuntary filing. In the state court, the Bank as Receiver has halted all activity, including all motions and pending sales.

On January 12, 2010, Denison State Bank, as Receiver on behalf of Starlite, filed an answer to the involuntary petition, and Denison State Bank asserted a counterclaim. The Receiver denied all allegations of the petition, including that the petitioners were eligible to file the petition. As affirmative defenses it alleged that the petition failed to state a claim on which relief could be granted and that the claim of petitioner H2O is contingent and the subject of a bona fide dispute. Denison State Bank alleges that as on July 2009, Starlite owed it $2,135,802, plus accruing interest, costs and attorney fees, on account of its secured claim. In its counterclaim, the bank seeks damages and attorney fees and costs on account of the alleged

wrongful filing of the involuntary proceeding. The Receiver also filed a motion to dismiss and a motion for abstention.

**ANALYSIS.**

**A. Denison as Receiver for the Debtor is a proper party to answer the involuntary petition.**

H2O contends that Debtor's answer, motion to dismiss for lack of service, and motion to dismiss or abstain should be disregarded because the signature blocks were signed by Cynthia Grimes, "attorneys for Denison State Bank," rather than as attorney for Denison State Bank, Receiver for Starlite Houseboats, Inc. Debtor responds that this argument raises form over substance and the Court agrees. Although a creditor is not included in the persons who may file an answer to an involuntary petition, the pleadings when read in their entirety clearly reflect that the answer was filed by Denison in its capacity as Receiver. The Kansas receivership statutes in K.S.A. 17-6901 vest a receiver with power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits, . . .." The Court finds that the Receiver is a proper party to answer the petition.[4]

**B. Was the Summons in the Involuntary Case properly served on Starlite Houseboats, Inc.?**

At trial the Court ruled that service of the summons and the involuntary complaint conformed to federal law. The Court has now reviewed the question in more detail, and finds that its prior decision was not correct.

---

[4] *See In re Sun World Broadcasters, Inc.*, 5 B.R. 719, 721 (Bankr. M.D. Fla. 1980).

Service of a summons and involuntary petition is governed by Rule 1010,[5] which provides that service shall be in accord with Rule 7004(a) and (b).  Rule 7004(b)(3) permits service by first class mail postage prepaid on corporations in accord with the following:

> Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

In this case, the summons with a copy of the involuntary petition was served by first class mail, postage prepaid addressed to "Starlite Houseboats, Inc., 3706 S. Topeka Blvd. Suite 302, Topeka, KS 66609."  This method of service presents two problems.  First, the letter was actually delivered to suite 300 rather than suite 302.  Second and more importantly, the letter was not addressed to the "attention of officer, a managing or general agent, or any other agent authorized by appointment or law to receive service of process," as required by Rule 7004(b)(3).  Such service has been held insufficient.[6]  Further, service upon Mr. White, the attorney for the Receiver, would not have complied with Rule 7004(b)(3).

The Court upon further review of the question, finds that the summons and copy of the involuntary petition were not properly served.  However, the Court finds it unnecessary to conclude that the lack of service requires dismissal of the case.  At trial there was discussion of the fact that if the service was found defective, good service easily could have been obtained and

---

[5] Fed. R. Bankr. P. 1010.  All future references to the Federal Rules of Bankruptcy Procedure in the text shall be to "Rule ___."

[6] *In re Assoc. of Volleyball Professionals*, 256 B.R. 313, 317 (Bankr. N. D. Cal.  2000) (under Rule 7004(b)(3) service not directed to the attention of anybody in particular is not sufficient").

10

the same issues would have again been raised.  Counsel acknowledged that waiver of the service

issue avoided duplication of effort and expenses which would have arisen if the Court had found

improper service and had dismissed the proceedings before hearing evidence on the additional

issues raised by the pleadings.  Counsel therefore waived by implication the insufficiency of

service of the complaint as a defense, thereby consenting to the Court's jurisdiction.

    **C.  Because H20's judgment claim against Starlite Houseboats, Inc. is subject to a
bona fide dispute as to liability or amount, the petition was not filed by three
qualified creditors as required by § 303(a).**

    Section 303(b)(1)[7] provides that an involuntary petition may be filed "by three or more

entities, each of which is either a holder of a claim against such person that is not contingent as

to liability or the subject of a bona fide dispute as to liability or amount."  H2O asserts it is such

a creditor because it obtained a default judgment against Starlite Houseboats, Inc. in the Federal

Case.  Debtor responds that the judgment is subject to a bona fide dispute as to liability or

amount because the default judgment was entered without personal jurisdiction over the Debtor

based upon insufficiency of service of process.

    The Tenth Circuit Court of Appeals in *Bartmann*[8] adopted the following objective test of

what claims are subject to a bona fide dispute as to liability or amount:

> . . . The term "bona fide dispute" is not defined in the Code and
> has been the subject of much debate. We choose to adopt the
> standard propounded by the Seventh Circuit as to what constitutes
> a bona fide dispute: "the bankruptcy court must determine whether
> there is an objective basis for either a factual or a legal dispute as
> to the validity of debt." *In re Busick*, 831 F.2d 745, 750 (7th
> Cir.1987). The court need not determine the probable outcome of
> the dispute, but merely whether one exists. *Id.* Once the petitioning

---

[7] 11 U.S.C. § 303(b)(1).  All future citations to title 11 in the text shall be to the section number only.

[8] *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540 (10th Cir. 1988).

creditor establishes a prima facie case that its claim is not subject to a bona fide dispute, the burden shifts to the debtor to present evidence of a bona fide dispute. *In re Garland Coal & Mining Co.,* 67 B.R. 514, 521 (Bankr.W.D.Ark.1986); *see In re Taylor*, 75 B.R. 682, 684 (N.D.Ill.1987) (stating that to compel dismissal of an involuntary petition, the debtor must present proof of a bona fide dispute once the burden shifts because "[o]therwise, any debtor could defeat an involuntary petition ... by merely asserting that a bona fide dispute exists").[9]

Under this standard, the Court finds that there is a bona fide dispute as to whether the judgment is enforceable against the Debtor. In the Federal Case service of the summons and complaint was attempted under Kansas law. As examined below, the service was attempted by return receipt delivery authorized by K.S.A. 60-303(c) but did not comply with the applicable Kansas statute. The service could be found effective only if H2O may rely upon other Kansas statutes which unintentionally may have been satisfied or K.S.A. 60-204, which provides that service is effective if it "substantially" complies with one of the statutory methods. The parties dispute whether the default judgment was entered after effective service, and this Court finds that such dispute is bona fide. Therefore the Court finds that H2O lacks standing to be a petitioning creditor under § 303(b)(1) because there is a bona fide dispute as to liability for the judgment.

The Court now examines in detail the sufficiency of the service in the Federal Case. Federal Rule of Civil Procedure 4(b) provides for the clerk to issue a summons on or after a complaint is filed and subsection (c) provides that a summons must be served with a copy of the complaint. Absent waiver of service or voluntary appearance, proper service of the summons, accompanied by a copy of the complaint, is necessary to obtain jurisdiction over a defendant.

---

[9] *Id.*, 853 F.2d at 1543-44.

The method of service on a corporation, partnership, or association is addressed by subsection

(h) of Federal Rule of Civil Procedure 4 as follows:

> (h) Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> > (1) in a judicial district of the United States:
> >
> > > (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> > >
> > > (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant; or

H2O relies upon subsection (h)(1)(A) of Federal Rule of Civil Procedure 4, permitting service in

the manner prescribed by Federal Rule of Civil Procedure Rule 4(e)(1), which provides in

relevant part:

> (e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
>
> > (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

The state law upon which H2O relies is K.S.A. 60-303(c), authorizing service by return receipt

delivery, including service by certified mail "addressed to the person to be served in accordance

13

with K.S.A. 60-304."  Subsections (e) and (f) of K.S.A. 60-304 provide for service upon a

corporation as follows:

> As used in this section, "serving" means making service by any of
> the methods described in K.S.A. 60-303, and amendments thereto,
> unless a specific method of making service is prescribed in this
> section. Except for service by publication under K.S.A. 60-307,
> and amendments thereto, service of process under this article shall
> be made as follows:
>
> ***
>
> e) Corporations, . . ..  Upon a domestic or foreign corporation . . .
> (1) by serving an officer, manager, partner or a resident, managing
> or general agent, or (2) by leaving a copy of the summons and
> petition at any business office of the defendant with the person
> having charge thereof, or (3) by serving any agent authorized by
> appointment or required by law to receive service of process, and
> if the agent is one authorized by law to receive service and the law
> so requires, by also mailing a copy to the defendant. Service by
> return receipt delivery on an officer, partner or agent shall be
> addressed to such person at the person's usual place of business.
>
> (f) Corporation, . . ..  Whenever any . . . foreign corporation . . .
> authorized to transact business or transacting business without
> authority in this state, fails to appoint or maintain in this state a
> resident agent upon whom service of legal process or service of
> any such notice or demand may be had, whenever the resident
> agent of such corporation, . . . cannot with reasonable diligence be
> found at the registered office in this state, the secretary of state
> shall be irrevocably authorized as the agent and representative of
> the corporation . . . to accept service of any process or service of
> any notice or demand required or permitted by law to be served
> upon the corporation . . ..

In this case, the summons for Starlite Houseboats, Inc. was placed in an envelope addressed to:

> Starlite Houseboats, Inc.
> Registered Agent: Shelly Colby
> 3706 Topeka Blvd., Suite 302
> Topeka, KS 66609

14

The actual delivery of the envelope was made to 3706 Topeka Blvd., Suite 300. The person who signed the return receipt was Jolene Holmes, a secretary employed by Mr. Butler.

Although it is clear that H2O intended to serve the Kansas resident agent for Starlite Houseboats, Inc. in accord with Kansas law, it failed to do so for several reasons. First, the Kansas resident agent for Starlite Houseboats, Inc. was Shelly Coley, not Shelly Colby. Second, the envelope was not delivered to the Kansas registered office, which was suite 302. Although there is evidence that the address for Mr. Aldis was changed from suite 302 to suite 300, there is no similar evidence for the address of Starlite Houseboats, Inc. Finally, and most importantly, the envelope was not delivered Shelly Coley. Further, there is no evidence of the whereabouts of Shelly Coley, other than she no longer works in the accountant's office located at suite 302. Under these circumstances, proper service could have been obtained by several means, including personal service upon Mr. Aldis, president of Starlite, and service on the Kansas Secretary of State.

H2O's arguments that the service on the corporation was nevertheless effective under Kansas law raise substantial questions of law to which there is no clear answer. First, H2O asserts that delivery at the office of Mr. Butler was sufficient because as "attorney in fact for Mr. Aldis in regard to his business affairs, Mr. Butler was a general agent acting on behalf of Mr. Aldis who was the Registered Agent."[10] This could fail because, as stated above, Kansas law in K.S.A. 60-303(c) requires for service by delivery with return receipt that the summons be addressed to the person to be served. The corporate summons was addressed to the Kansas resident agent Shelly Colby (sic), not to Mr. Aldis who was the registered agent in Texas. In

_____

[10] Doc. 40, p. 6.

15

addition, even if the envelope had been addressed to Mr. Aldis, is was not delivered to him or to his agent, Mr. Butler; it is was delivered to Ms. Holmes.  Under Kansas law, service upon an individual's secretary who has not been appointed as a process agent for the person to be served, is not sufficient.[11]

Second, H2O argues that "at the time the summonses were received, Mr. Butler's office was assured of receiving business correspondence for Starlite as a result of the Change of Address filed with the Post Office.  In effect, Mr. Butler's office became a business office of Starlite."[12]  This argument is also open to serious challenge.  It assumes facts not in evidence; there was no evidence that there was a change of address form for Starlite Houseboats, Inc.  The related argument that service was sufficient because Mr. Butler qualifies to receive service under K.S.A. 60-304(e)(1) as a "general agent" of the corporation fails because Mr. Butler was agent in fact for Mr. Aldis, not the corporation, and the summons was not addressed to either Mr. Aldis or Mr. Butler.

Third, H2O argues the service complied with K.S.A. 60-304(e)(2), which permits service upon a corporation by "leaving a copy of the summons and petition at any business office of the defendant with the person in charge thereof."  This contention is subject to dispute.  The office at which the summons was left was the office of Todd Butler, not Starlite.  There is no evidence that Starlite actually had a business office, as contrasted with a mailing address.  Further, Starlite's mailing address was suite 302, not suite 300.  Finally, there is no evidence that Ms. Holmes was in charge of anything having to do with Starlite Houseboats, Inc.

---

[11] *Briscoe v. Getto*, 204 Kan. 254, 462 P. 2d 127 (1969);  *Haley v. Hershberger*, 207 Kan. 459, 485 P.2d 1321 (1971).

[12] Doc. 40, p. 6.

16

H2O's final argument is that its defective service of the summons is nevertheless effective pursuant to K.S.A. 60-204, which provides:

> . . . In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected.

Although it is established that Mr. Aldis had knowledge of the litigation, the case law on substantial compliance provides no clear answer on how it should be applied to this case. Of course, there is a dispute based upon case law, with H2O arguing that there was substantial compliance, and Debtor asserting that there was not.

The Court finds that there is a bona fide dispute whether Debtor is liable for the default judgment, and therefore H2O is not a creditor entitled to file an involuntary petition against Debtor. This Court declines to rule that service was or was not sufficient to grant the Federal District Court jurisdiction over the Debtor.[13] The question here is whether H2O is the holder of a claim that is not subject to a bona fide dispute as to liability or amount; that question can be answered without a ruling on the sufficiency of service. Because there is a bona fide dispute over service of process, the Court finds that the claim based upon the judgment is subject to bona fide dispute as to liability. The involuntary petition was therefore not filed by at least three creditors each holding a claim that is not contingent as to liability or subject to a bona fide dispute as to liability or amount.

---

[13] A court which may have cause to enforce the judgment, such as the Jackson County District Court or the Federal District Court, is the proper forum for such determination.

Since H2O relies upon the judgment[14] and does not advance the argument that the claim underlying the judgment is not subject to bona fide dispute, the Court need not consider this question.

**D.  Assuming that the petition was filed by three holders of claims satisfying the criteria of § 303(b)(1), the court would nevertheless abstain from hearing this case.**

The Code in § 305 grants "significant discretion to the bankruptcy courts to decline, in certain circumstances, to exercise jurisdiction over a case filed under title 11."[15]  It provides in part that "the court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension."[16]

One of the questions posed by a motion to abstain under 305(a) is what factors the court should consider.  Some courts limit abstention under 305(a) to cases when the specific factors mentioned in the legislative history are present, while others adopt a construction allowing bankruptcy courts to use their discretion in evaluating a wide rage of factors.[17]  The narrow view is illustrated by an opinion of former Bankruptcy Judge Franklin in *RAI,* a case where an involuntary was filed by three creditors after debtor ceased doing business and paying its bills, but no receivership of other state court proceeding had been filed.[18]  Based upon "the general

---

[14] *See* Doc. 23, p. 8.

[15] 2 *Collier on Bankruptcy* ¶ 305.01 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. rev. 2009).

[16] 11 U.S.C. § 305 (a)(1).

[17] *See In re Spade*, 269 B.R. 225, 227-285 (D. Colo. 2001).

[18] *In re RAI Marketing Services, Inc.*, 20 B.R. 943 (Bankr. D. Kan. 1982).

18

rule that courts should exercise jurisdiction when properly invoked, and given the fact that an

abstention order is not appealable," he found § 305(a) should be strictly construed.[19]  He

interpreted the following statement from the conference committee as illustrative of the purpose

of § 305:

> A principle of the common law requires a court with jurisdiction
> over a particular matter to take jurisdiction.  This section
> recognizes that there are cases in which it would be appropriate for
> the court to decline jurisdiction.  . . .  Thus, the court is permitted,
> if the interests of creditors and the debtor would be better served
> by dismissal of the case or suspension of all proceedings in the
> case, to so order.  The court may dismiss or suspend under the first
> paragraph, for example, if an arrangement is being worked out by
> creditors and the debtor out of court, there is no prejudice to the
> rights of creditors in that arrangement, and an involuntary case has
> been commenced by a few recalcitrant creditors to provide a basis
> for future threats to extract full payment.  The less expensive
> out-of-court workout may better serve the interests in the
> case . . ..[20]

Judge Franklin therefor held that proceedings should be dismissed or suspended under § 305

only when:

> 1. The petition was filed by a few recalcitrant creditors and most
> creditors oppose bankruptcy;
> 2. There is a state insolvency proceeding or other equitable and
> concrete out-of-court arrangement pending; and,
> 3. Dismissal or suspension is in the best interest of the debtor and
> all creditors.[21]

---

[19] *Id.*, 20 B.R. at 945.

[20] *Id.*, *quoting* H. Rep. No. 95-595, 95th Cong., 1st Sess. (1977) 325; S. Rep. No.95-989, 95th Cong., 2d Sess. (1978) 35, U.S. Code Cong. & Admin. News 1978, pp. 5787, 6281.

[21] *Id.*, 20 B.R. at 946.

In the Tenth Circuit, the more expansive view of the factors to be considered and the circumstances when abstention is appropriate is represented by *Tarletz*.[22]  In that case an involuntary petition was filed against a guarantor.  Before the bankruptcy, the petitioning creditors had sued the debtor in state court but were advised that trial would not be as speedy as they desired.  As to the motion to abstain, after finding that the example set forth in the legislative history "is not intended to be inclusive," the court identified three factors relevant to the case before it: "[T]he motivation of the petitioners, whether the bankruptcy court or the state court can better serve the interests of the creditors and the detriment of the bankruptcy proceeding to the debtor."[23]  These factors were not identified as an exclusive list.

The Colorado Bankruptcy Court in *Spade*[24] thoroughly analyzed the divergent approaches of *RAI* and *Tarletz*.  It rejected *RAI* for two reasons - because it was based upon erroneous statutory construction which altered the § 305 to conform to the legislative history and the overwhelming support of the *Tarletz* interpretation by other courts. "Clearly, the historical and contemporary trend in § 305 case law permits courts to consider a wide variety of factors relevant to the facts of the particular case in determining whether to abstain under § 305."[25]  The court then identified as relevant the motivation of the parties seeking bankruptcy jurisdiction, whether another forum is available to protect the interests of both parties or such a proceeding is

---

[22] *In re Tarletz*, 27 B.R. 787 (Bankr. D. Colo. 1983).

[23] *Id.*, 27 B.R. at 793.

[24] *In re Spade*, 258 B.R. 221, 225-231 (Bankr. D. Colo. 2001).

[25] *Id.*, 258 B.R. at 231.

20

already pending, the economy and efficiency of administration, and the prejudice to the parties.[26]

Using these factors, the court in its discretion granted the § 305(a) motion.  The district court

affirmed.[27]     Collier finds that although the circumstances satisfying the three part test of *RAI*

"undoubtedly justify abstention, section 305(a) is not so limited and additional fact patterns may

justify abstention."[28]  The following are identified by Collier as common fact patterns: When a

case is filed to obtain leverage in out-of court restructuring negotiation; when there is an absence

of bankruptcy purpose, such as discharge, debt adjustment, or need for a breathing spell from

creditors; when state law liquidation proceedings are pending; when the bankruptcy is essentially

a two party dispute; and comity to pending foreign insolvency proceedings.[29]

       This Court agrees with the analysis of the *Spade* bankruptcy court and the position of

Colliers that abstention may be warranted in circumstances other than those strictly complying

with the *RAI* three part test.  In this Court's opinion, the *RAI* standard for abstention is

inconsistent with granting the court discretion to abstain when the interests of creditors and the

debtor would be better served by dismissal.  If those three factors were the only circumstances

when abstention could be ordered, Congress would have said so in the statute.  Only by

considering all of the relevant circumstances of the case can the court make a sound decision

whether a particular case presents the rare circumstance where dismissal is appropriate.  Further,

one of the reasons given by Judge Franklin for the strict interpretation was the absence of a right

---

[26] *Id.*, 258 B.R. at 231-39.

[27] *In re Spade*, 269 B.R. at 225.

[28] 2 *Collier on Bankruptcy* ¶ 305.02[2][a]

[29] 2 Collier on Bankruptcy ¶ 305.02[2].

of appeal.  Section 305 has since been amended to provide that only appeal to the circuit court is prohibited; appeal to the district court is permitted.

The Court therefore considers the following four factors:

(1)  Although three creditors signed the involuntary petition, it is essentially a two party dispute between two creditors, H2O and Denison State Bank.  Only one of the petitioning creditors, H2O, responded to the answer and is actively opposing dismissal.  No non-petitioning creditors of the Debtor have participated in this proceeding.  The only creditor actively objecting to the receivership is H2O; there is no evidence that other creditors have problems with the receivership.

(2)  The Debtor's affairs are the subject of a pending state court receivership.  H2O's objections to that proceeding as inadequate forum and its arguments that the perceived deficiencies of that proceeding support the non-dismissal of the involuntary case are rejected. First, H2O complains that Denison State Bank should not serve as the Receiver because of an inherent conflict of interest between its role as Receiver and as creditor.  The Court notes that the Kansas receivership statutes in K.S.A. 17- 6901 does not prohibit a creditor from applying to serve as receiver of an insolvent corporation.  The conflict of interest rules applicable in title 11 cases do not apply in state court.   Any contention that this case is unique and that an independent receiver should be appointed should be directed to the receivership court.  Second, H2O argues that the Receiver has exceeded the authority granted to it by state law and the Jackson County Court.  However, H2O has failed to present evidence of any wrongdoing, such as fraud, or significant actions which were not approved by the receivership court.  These contentions are also matters which can be presented to and resolved by the state court.

22

(3) The state court receivership had been pending for approximately eight months when this case was filed.  Notice of the receivership had been given to creditors.  With the approval of the receivership court, Denison has advanced funds and life insurance proceeds have been used to complete boats.  At least one valuation hearing has been conducted.  Sales of boats have been approved.  The conduct of the receivership is intertwined with the probate of the estate of Mr. Aldis, pending in the same state court.  If the receivership was to be displaced by a proceeding under Chapter 11, a petition to do so should have been filed promptly after Mr. Aldis's death when it was apparent that Debtor was insolvent and its assets needed to be liquidated in an orderly manner.  The alleged conflict of interest about which H2O complains was as apparent when the receivership was filed as it was when the involuntary petition was later filed.  Rather than promptly seeking relief under title 11, H2O waited until December 2009 to file the involuntary.  In the meantime, H2O had participated in the receivership and filed a claim in July 2010.  H2O waited to file the involuntary until Denison would not agree to the compromise of H2O's claim and the receivership court was about to approve the sale of some assets of the Debtor.

(4) Given the status of the receivership and the status of Debtor's affairs, the administration of the Debtor's estate is best left to the state court.  Debtor would not benefit from a bankruptcy; discharge from debts and the automatic stay of § 362 are meaningless in this case.  Unsecured creditors would not benefit from bankruptcy as the Court finds credible the Receiver's testimony that no assets will remain after payment of secured claims.  If this case were to proceed, it is unknown who would prepare schedules, who would appear at the meeting of creditors, and who would otherwise present Debtor's affairs.  Mr. Aldis was the sole director,

23

officer, and shareholder. There is no evidence that there were any employees. Although H2O has not identified any potential avoidance actions which would benefit the estate, a Chapter 7 Trustee would likely feel compelled to examine the Receiver's actions, even though they were subject to court supervision and would be unlikely to result in assets for the benefit of unsecured creditors. The current status of the probate and related receivership being in the same court undoubtedly conserves judicial resources. It is likely that the Debtor's estate can be liquidated and its affairs finalized more quickly and for less cost in state court.

Based upon the foregoing factors, the Court concludes that the interests of creditors and the Debtor would be served by the dismissal of the case. Under the circumstances, continuation of the state court receivership proceeding, which is well underway, is preferable to starting anew in this court.

### E. The counterclaim of Denison State Bank against H2O is dismissed without prejudice.

The Receiver's answer to the involuntary petition includes a counterclaim filed by Denison State Bank, as creditor, against H2O. The Court finds that the counterclaim was not properly pleaded and dismisses it without prejudice. The involuntary petition was filed against Denison State Bank, as Receiver for Debtor, not against Denison State Bank, a creditor. An answer to the petition was therefore not the proper procedure for Denison State Bank to assert a claim for damages against H2O.

### CONCLUSION.

The Court holds that Denison State Bank, as Receiver for Starlite Houseboats, Inc. is a proper party to answer the involuntary petition. The Court holds it has jurisdiction over the Debtor as the objection to service of the involuntary petition was waived at trial. The Court also

24

finds that the claim of H2O against Starlite Houseboats, Inc., based upon the default judgment in the Federal Case, is subject to a bona fide dispute as to liability. H2O is therefore not a creditor with standing to file an involuntary petition. Moreover, even if H2O were such a creditor, the Court would abstain from hearing this case, because this is a two party dispute; there is a state court receivership pending where the concerns raised by H2O can be heard; H20 delayed in filing the involuntary until substantial actions had been taken in the receivership; Starlite Houseboats, Inc. would not benefit from bankruptcy relief and there is no evidence that the interests of creditors would benefit from bankruptcy; and it is likely that the affairs of the Debtor will be finalized more quickly and for less cost in the state court.

This case is dismissed. The counterclaim of Denison State Bank against H2O is dismissed without prejudice.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

**###**

25